<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICIA LAURIA and : <br> STEVEN MADDEN, LTD. : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> MANDALAY CORP. d/b/a MANDALAY : <br> BAY RESORT CASINO wholly owned : <br> subsidiary of MGM MIRAGE, and : <br> THE WORLD SHOE ASSOCIATION : <br> a/k/a WSA GLOBAL HOLDINGS, LLC. : <br> : <br> Defendants. : | Civ. No. 07-817 (GEB) (TJB) <br><br> **MEMORANDUM OPINION** |

<u>**BROWN, Chief Judge**</u>

  This matter comes before the Court upon the motion of defendant Mandalay Corp. d/b/a Mandalay Bay Resort Casino ("Mandalay") to dismiss and to change venue (Docket No. 30) and upon the motion of defendant World Shoe Association a/k/a WSA Global Holding, LLC ("WSA") to dismiss, to transfer venue, and for declaratory judgment (Docket No. 32).  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The Court heard oral argument from the parties by telephone conference on July 30, 3008.  For the reasons set forth below, this Court will grant Mandalay's motion to dismiss and to change venue.  The Court will grant in part and deny in part WSA's motion to dismiss, to transfer venue, and for declaratory judgment.

I.     BACKGROUND

This is a slip and fall case.  According to the Complaint, Plaintiff Patricia Lauria ("Lauria") attended a trade show for women's shoes in Las Vegas, Nevada, and while at the trade show Lauria slipped and fell on excess debris or liquid on the floor.  Lauria and her employer, plaintiff Steven Madden, Ltd. ("Madden", collectively "Plaintiffs"), allege that Lauria was "invited, encouraged, and enticed" to enter the Mandalay Bay Convention Center ("Convention Center") for the trade show staged by WSA.  (Compl. ¶¶ 6-9.)  Plaintiffs assert that Defendants negligently maintained the premises, including the floors of the Convention Center, in an "unsafe, hazardous and defective manner" and as a result Lauria "sustained injuries causing permanent disability, permanent significant disfigurement, and permanent loss of a bodily function or loss of a body member in whole or in part; and has incurred and/or will incur . . . expenses for the treatment of these injuries . . .; has been disabled and . . . will be disabled and not able to perform her usual function; and has been caused . . . great pain and suffering."  (Id. at ¶¶ 11-12, 14-17.)  Additionally, Plaintiffs allege that "[t]he actions of the Defendants . . . were willful in having knowledge that the facilities designated to be used for the show would require individuals to go through the kitchen/food preparation area, in which food substances, liquid or otherwise, would be on the floor which could result in individuals being caused injuries such as the Plaintiff herein."  (Id. at ¶ 34.)  Plaintiffs also assert that Madden has and will suffer financial damage "due to the loss of this critical employee."  (Id. at ¶¶ 42, 47, 51.)  Plaintiffs also state that Defendants' allegedly "willful conduct" that "had as its practical effect the intentional and wanton interference with the employee relationship between Plaintiffs." (Id. at ¶ 56.)

**II.     DISCUSSION**

    **A.     Motions to Dismiss**

        **1.     Standard of Review on a Motion to Dismiss**

A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007) (abrogating the Conley standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In other words, a complaint must contain sufficient factual allegations to raise a right to relief above the speculative level. Id. at 1965. However, in light of Twombly, the Third Circuit has held that "[i]t remains an acceptable statement of the standard, for example that courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief'." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citations omitted). The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied 510 U.S. 1042 (1994).

## 2. Madden Has Not Stated A Claim

Both WSA and Mandalay (collectively "Defendants") argue that Madden's claims should be dismissed because courts have held that tort claims by employers for economic loss related to injuries to their employees are not cognizable. Mandalay also argues that Nevada law applies to Madden's claims and that Nevada's "economic loss doctrine" bars recovery in tort to a plaintiff, such as Madden, suffering purely economic damages. Plaintiffs clarified on oral argument that they contend that the injury to Madden was foreseeable and thus Madden's claims should survive the present motions.

First the Court must consider which state's law to apply. Mandalay argues that Nevada law is applicable. Plaintiffs did not appear to contest this in their brief. (Pls.' Br. at 13 ("Madden would be entitled to relieve [sic] pursuant to contract law under Nevada's economic loss doctrine").) However, during oral argument, Plaintiff asserted that New Jersey law should apply because Defendants knew that Lauria resided in New Jersey and was employed here.

A court exercising diversity jurisdiction must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). New Jersey choice-of-law principles require a government interest analysis, in which the forum court compares the interests of the states whose laws are potentially involved in the underlying action and determines which state has the greatest interest in having its laws applied. In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 348 (D.N.J. 1997) (citing Gantes v. Kason Corp., 679 A.2d 106 (N.J. 1996)). Under New Jersey conflict rules, the first step is "to determine whether a conflict exists between the laws of the interested states" on the relevant issue. Rowe v. Hoffman-La Roche, 917 A.2d 767, 771 (N.J. 2007) (citation omitted). If there is

4

an actual conflict, the court then "seeks to determine the interest that each state has in resolving the specific issue in dispute." Id. (citation omitted).

The Court concludes that there is no actual conflict in this case, because neither New Jersey nor Nevada law would permit an employer to recover under a negligence theory for economic losses solely derived from an injury to an employee. Thus Madden has no negligence claim.

Generally, courts to have recently considered the issue have denied employers recovery of economic damages relating to an employee's injury inflicted through negligence. See Champion Well Service, Inc. v. NL Industries, 769 P.2d 382 (Wyo. 1989); Behrens v. Metro. Opera Ass'n, Inc., 18 A.D.3d 47, 52 (N.Y. App. Div. 2005); Evans Vending Serv., Inc. v. Raymond, 666 So. 2d 334 (La. Ct. App. 1995); Gonzales v. Yancey, 939 P.2d 525 (Colo. Ct. App. 1997); Cravens/Popcock Ins. Agency, Inc. v. John F. Beasley Constr. Co., 766 S.W.2d 309 (Tex. App. 1989); Edward F. Heimbrock Co. v. Marine Sales & Serv., Inc., 766 S.W.2d 70 (Ky. Ct. App. 1989); B.V. Merrow Co. v. Stephenson, 300 N.W. 2d 734 (Mich. Ct. App. 1980). Indeed, Courts have denied recovery to employers even when the defendants knew that the injured employee was "a key employee" of the employer. See, e.g., Steele v. J & S Metals, Inc., 335 A.2d 629, 630 (Conn. Super. Ct. 1974). Madden has not cited any cases that would support a contrary decision in Nevada or New Jersey.

Under Nevada law, negligence claims are restricted by the "economic loss doctrine," which holds that "[p]urely economic losses fall outside the purview of tort recovery, even if such losses are foreseeable." Calloway v. City of Reno, 993 P.2d 1259, 1270 (Nev. 2000), overruled on other grounds by Olson v. Richard, 89 P.3d 31 (Nev. 2004). The Nevada Supreme Court has

stressed that "foreseeability of damages plays no role with respect to the economic loss doctrine." Calloway, 993 P.2d at 1270.  The Ninth Circuit, in analyzing Nevada's law has observed that "[b]roadly speaking, Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability." Giles v. General Motors Acceptance Corp., 494 F.3d 865, 879 (9th Cir. 2007).  Madden has alleged only tort-based economic loss unrelated to any personal or property damage it suffered.  Madden only relies upon the alleged personal injuries of Lauria, a "key" employee.  The Court concludes that, under Nevada law, recovery of such damages under a negligence theory would be barred by the economic loss doctrine.

The analysis under New Jersey law is slightly different, but the result is the same.  In New Jersey:

> a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty.

People Exp. Airlines, Inc. v. Consolidated Rail Corp., 495 A.2d 107, 116 (N.J. 1985).  The People Express court stressed "that an identifiable class of plaintiffs is not simply a foreseeable class of plaintiffs.  For example . . . invitees such as sales and service persons at a particular plaintiff's business premises . . . are certainly a foreseeable class of plaintiffs. Yet their presence within the area would be fortuitous, and the particular type of economic injury that could be suffered by such persons would be hopelessly unpredictable and not realistically foreseeable." Id. at 116.  Thus, "[u]nder People Express, traditional foreseeability and proximate causation

analysis establish limits upon a defendant's liability for economic loss." Complaint of Nautilus Motor Tanker Co., Ltd., 900 F.Supp. 697, 701 (D.N.J. 1995). In this case, the Court concludes that the range of economic injury that could be suffered by employers such as Madden is "hopelessly unpredictable and not realistically foreseeable." Thus, the Court concludes that New Jersey would not allow Madden to recover here.

There is also no actual conflict regarding Madden's claim for willful or intentional interference with an employment relationship. Although the Complaint alleges that Defendants willfully interfered with the employee relationship between Madden and Lauria (Compl. ¶¶ 52-56), the Complaint does not allege facts that could support the level of intent required under either Nevada or New Jersey law. See Alam v. Reno Hilton Corp., 819 F. Supp. 905, 911 (D. Nev. 1993) (Nevada requires intentional acts designed to disrupt the contractual relationship); Singer v. Beach Trading Co., Inc., 876 A.2d 885, 895 (N.J. Super. Ct. App. Div. 2005) (New Jersey requires that the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse). The Complaint merely alleges that defendant knew or should have known of the risk of a slip and fall; this is not an intent to harm the relationship between Lauria and Madden.[1]

Even if there were a conflict of laws in this case, New Jersey would apply Nevada law, which, as discussed above, plainly prevents recovery. "In personal injury cases, the place of the

---

[1] Of course, Madden's claims for punitive damages must be dismissed because there is no viable underlying cause of action. See, e.g., Smith v. Whitaker, 734 A.2d 243, 250 (N.J. 1999) ("As a rule, a claim for punitive damages may lie only where there is a valid underlying cause of action"); Coughlin v. Hilton Hotels Corp., 879 F. Supp. 1047, 1052 (D. Nev. 1995) (stating that under Nevada law a plaintiff must be awarded compensatory damages in order to recover punitive damages).
.

7

injury is important, and when both the conduct and the injury occur in the same place, that jurisdiction's law generally will apply except in those rare instances where another jurisdiction has a demonstrably dominant interest and no policy of the situs state is frustrated by application of the sister state's policy." Erny v. Estate of Merola, 792 A.2d 1208, 1217-1218 (N.J. 2002) (citation omitted).  The present case is not one of those "rare instances."  Indeed, New Jersey courts have recognized, in a similar situation, that New Jersey's concern for its injured citizens, although legitimate, is outweighed by another state's legitimate interest in discouraging unsafe local property conditions and unsafe local conduct.  See, e.g., O'Connor v. Busch Gardens, 605 A.2d 773, 775 (N.J. Super. Ct. App. Div. 1992) ("If New Jersey's comparative negligence doctrine followed [plaintiff onto defendant's amusement park attraction] in Virginia, it would follow her into every other state as well, and would supplant local liability rules wherever she went. That would be an impermissible intrusion into the affairs of other states.").

Thus, the Court concludes that Madden has not stated plausible grounds for entitlement to relief.

      **B.**      **Motions to Transfer Venue**

Defendants seek to transfer this action to the District of Nevada.  Title 28, United States Code, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The purpose of Section 1404(a) is to avoid the waste of time, energy and money, and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." Tischio v. Bontex, Inc., 16 F. Supp.2d 511, 518 (D.N.J. 1998) (citing Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993); Am. Tel.

& Tel. Co. v. MCI Communications Corp., 736 F. Supp. 1294, 1305 (D.N.J. 1990)).

"Whether to transfer a case is generally committed to the discretion of the district courts." In re United States, 273 F.3d 380, 387 (3d Cir. 2001); see also Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973) (under § 1404(a), "the district court is vested with a wide discretion").  However, when determining whether to transfer a matter, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 498 (D.N.J. 1998) (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995)).  "The burden of establishing the need for transfer still rests with the movant." Jumara, 55 F.3d at 879.  Although the Third Circuit has not provided a definitive list of factors, the Third Circuit has identified the following factors that may be considered:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum) . . . . the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity

Jumara, 55 F.3d at 879-880 (citations omitted); see also Foley & Lewis Racing, Inc. v. Burling, No. 07-972 (JEI), 2008 WL 544655, at *3 n.11 (D.N.J. Feb. 27, 2008) (listing factors).

After considering all relevant factors, this Court concludes that transfer of venue is proper.  Here, the Defendants prefer Nevada, the claim arose in Nevada and a number of listed

non-party witnesses are present in Nevada. (Mandalay's Br. at 6-8.) Furthermore, Nevada has a local interest in determining local negligence issues, and the District of Nevada is likely more familiar with Nevada law. Moreover, at oral argument it became clear that the nature of the area where the accident occurred would be a hotly contested issue in this litigation. Plaintiffs argue that the accident occurred in a room that served as a kitchen or service hallway at the Convention Center. Plaintiffs claim that this room was constructed as a temporary area within the Convention Center and no longer exists in a similar condition. The Defendants dispute this. In any event, the Court has no evidence before it on this issue. Most of the relevant evidence on this issue would likely come from Nevada - the Convention Center is there and the owners of and workers at the convention center are presumably located in Nevada, as well as the emergency room and initial treatment personnel.

On the other hand, New Jersey is Lauria's chosen forum, and the doctors that have treated Lauria after she returned to New Jersey are in New York and New Jersey. Plaintiffs also claim that witness employed by Madden and Nordstrom that were with Lauria at the time of the accident are located in New Jersey. However, Lauria does not identify any particular witnesses that would be inconvenienced by the transfer.

After balancing all of the factors, the Court concludes that this case should be transferred to the District of Nevada.

    **C.**    **Motion for Declaratory Judgment**

Finally, the Court declines to rule on WSA's request for declaratory judgment on its counterclaims in light of the transfer of the underlying action. Therefore, WSA's motion for declaratory judgment is denied without prejudice to refile.

### III.     CONCLUSION

For the foregoing reasons, this Court will grant Mandalay's motion, and grant in part and deny in part WSA's motion.  Madden's claims are dismissed and the case is transferred to the District of Nevada.  An appropriate form of order is filed herewith.


Dated: August 18, 2008


                                                                          s/ Garrett E. Brown, Jr.
                                                            GARRETT E. BROWN, JR., U.S.D.J.